UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────────X

KHUBLAL RAMRATAN, RAJKUMAR SINGH,
SURUJAUL SINGH, ANITA SUKHOO,
CHANDRAINE BOODHAN, and VANCE CAINES,

                Plaintiffs,

-against-                      **MEMORANDUM & ORDER**
                                        **06-CV-04770 (NGG)(RML)**

NEW YORK CITY BOARD OF ELECTIONS and
TERRENCE C. O'CONNOR, ANTHONY COMO,
JEANETTE GADSON, NERO GRAHAM, JR.,
JAMES J. SAMPEL, NANCY MOTTOLA-SCHACHER,
GREGORY C. SOUMAS, FREDERIC M. UMANE,
and MARYANN YENNELLA, *Commissioners
of New York City Board of Elections*,

                Defendants.
─────────────────────────────────────────X

GARAUFIS, United States District Judge:

      Before the court is Plaintiffs' motion for a preliminary injunction against the New York City Board of Elections (the "Board of Elections") and its commissioners. Plaintiffs are voters seeking to place Michael Duvalle ("Duvalle") and Vienna Totaram ("Totaram") on the ballot for the Democratic primary election to be held September 12, 2006, as candidates for the offices of Member of Assembly and Female Assembly District Leader, respectively, in the 31st Assembly District of Queens County, New York State. Duvalle and Totarum were placed on the ballot by the Board of Elections following their submission of designating petitions on July 11, 2006. (Complaint ¶ 14.) They were later removed from the ballot pursuant to an order of the New York State Supreme Court, Queens County (the "State Supreme Court"), which found that the

designating petitions were products of "permeating fraudulent misrepresentation." Butler v. Duvalle, No. 15994/06, *slip op.* at 7-8 (N.Y. Sup. Ct. Aug. 10, 2006); see also Duvalle v. Butler, No. 16301/06, *slip op.* (N.Y. Sup. Ct. Aug. 10, 2006). The Appellate Division of the State Supreme Court (the "Appellate Division") affirmed this decision unanimously shortly thereafter. Butler v. Duvalle, 819 N.Y.S.2d 670 (N.Y. App. Div. 2d Dept. 2006).

Plaintiffs purport to be, and I assume for the purpose of deciding this motion that they are, "duly qualified Queens County Democratic voters."[1] (Complaint ¶ 3.) They bring suit under 42 U.S.C. § 1983, arguing that "the process that took place in Queens County Supreme Court," i.e., that court's decision to remove Duvalle and Totaram from the ballot, violated Plaintiffs' federal constitutional rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment. (Complaint ¶ 15.)

Because Plaintiffs have not demonstrated a likelihood of success on the merits, their motion for a preliminary injunction is denied.

## II.     Legal Analysis

This Court owes great deference to state court decisions interpreting state election law. As the Second Circuit has explained:

> Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law. Absent a clear and unambiguous mandate from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an

---

[1] The Plaintiffs in this case were not parties to the proceedings in the State courts, which were brought by rival candidates to Duvalle and Totaram and one "objector" to their designating petitions.

> area which, with certain narrow and well defined exceptions, has
> been in the exclusive cognizance of the state courts.

Powell v. Power, 436 F.2d 84, 86 (2d Cir. 1970) (footnote omitted); see also Shannon v. Jacobowitz, 394 F.3d 90, 94-95 (2d Cir. 2005) (observing that Powell is still the law in this Circuit); Friedman v. Abrams, 600 F.Supp. 596, 598 (S.D.N.Y. 1985) ("In view of the great deference given state courts in administering election laws, this Court will not quarrel with the Appellate Division's view of the proper construction of the statute.").

Plaintiffs are duly qualified voters, and therefore have standing to allege that they have been deprived of their constitutional rights to due process and equal protection in violation of 42 U.S.C. § 1983. See, e.g., Gold v. Feinberg, 101 F.3d 796 (2d Cir. 1996); Powell, 436 F.2d 84 (2d Cir. 1970). Because they were not parties to the earlier state court proceedings, their action is not barred by res judicata. Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 284 (2d. Cir. 2000).

### A.    Preliminary Injunctions

"[T]he party seeking a preliminary injunction must establish that (1) absent injunctive relief, it will suffer an irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tips in favor of the movant." Hickerson v. City of New York, 146 F.3d 99, 103 (2d Cir. 1998). The likelihood-of-success standard applies whenever, as here, the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme. Bery v. City of New York, 97 F.3d 689, 694 (2d Cir. 1996). For the purpose of deciding this motion, I assume that Plaintiffs will suffer an irreparable injury if they

are denied injunctive relief. The election at issue will take place soon, on September 12, 2006. Absent injunctive relief, voters who wish to vote for Duvalle or Totaram on that date will not find their names on the ballot. However, because I find that Plaintiffs have not shown a likelihood of success on the merits of their claims, there is no need for the court to engage in a detailed analysis of this alleged injury.

### B. Constitutional Claims Under § 1983

"To state a claim for relief in an action brought under § 1983, [Plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). The Supreme Court has construed the word "person" in § 1983 to include municipal corporations and similar governmental entities such as the Board of Elections. See Howlett v. Rose, 496 U.S. 356, 376 (1990); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 663 (1978). As the individual defendants are "officials . . . who speak with final policymaking authority for" the Board of Elections, McMillian v. Monroe County, 520 U.S. 781, 784-85 (1997) (quoting Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989)), I find that Plaintiffs have sufficiently alleged state action.

Plaintiffs allege that they were deprived of their rights to due process and equal protection under the Fourteenth Amendment. I address each issue in turn.

#### 1. Due Process

In order to prove a due process violation, Plaintiffs must show that a state actor intentionally deprived them of a constitutional right. Shannon v. Jacobowitz, 394 F.3d 90, 95-96 (2d Cir. 2005). As already noted, the decision to remove Duvalle and Totaram from the ballot

4

was made by the State Supreme Court, affirmed by the Appellate Division, and directed to the Board of Elections. Plaintiffs therefore seem to allege that the Board of Elections and its commissioners violated Plaintiffs' due process rights by obeying an injunction issued by the State Supreme Court.

That the Board of Elections obeyed the court's injunction is not surprising. New York's Election Law provides that "[t]he supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any subject set forth in this article[.]" N.Y. Elec. L. § 16-100(1); see also Coven v. Previte, 389 N.Y.S.2d 225, 228 (1976) (extrinsic fraud is an issue for the courts, not the Board of Elections); Mirrington v. VanDeMark, 273 N.Y.S.2d 94, 97-98 (1966) (same). Defendants have not argued that the State Supreme Court's decision "cloaked" their actions in immunity or that they are otherwise immune from suit under § 1983 jurisprudence. Inasmuch as the Board of Elections executed a directive that "may fairly be said to represent official policy," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), and that caused the injury of which Plaintiffs complain, I will now consider whether the directive itself ordered a violation of Plaintiffs' constitutional rights.

I have reviewed the relevant State Supreme Court opinions and a transcript of the two-day proceeding before that court. In doing so, I found extensive support for that court's conclusion that "the testimony and exhibits establish, by clear and convincing evidence, that . . . the entire operation [underlying Duvalle's and Totaram's designating petitions] resulted in petitions that are permeated with fraud[.]" Butler v. Duvalle, No. 15994/06, *slip op.* at 15 (N.Y. Sup. Ct. Aug. 10, 2006). Contrary to Plaintiffs' claim that the Supreme Court relied solely on the testimony of one less-than-credible campaign employee (Transcript of the hearing held September 5, 2006

5

("Tr.") at 34, 37-38), it is clear that the State Supreme Court considered and relied upon an extensive record, including several witnesses' testimony and the petitions themselves, in concluding that petitions were gathered improperly.[2] In particular, the State Supreme Court relied on the testimony of:

- Malissa Manbodh, an under-age petition gatherer who testified that she collected petitions that she did not sign as a subscribing witness, that other under-age campaign employees also collected petitions, and that several eligible subscribing witness signed numerous signature sheets that Manbodh collected outside their presence;

- Orandai Allen, a non-citizen petition gatherer who testified that he collected petitions that he did not sign as a subscribing witness and that others signed those petitions as subscribing witnesses;

- Claudia Pabon, an eligible subscribing witness who testified that she did not sign petitions she collected, that she did not know who in fact signed those petitions, and that she signed petitions collected by others;

---

[2] The New York State law that the State Supreme Court found was violated provides that "[t]here shall be appended at the bottom of each sheet [of a designating petition] a signed statement of a witness who is a duly qualified voter of the state and an enrolled voter of the same political party as the voters qualified to sign the petition[.]" N.Y. Elec. L. § 6-132(2). The signed statement must include the following text: "Each of the individuals whose names are subscribed to this petition sheet containing _____ (fill in number) signatures, subscribed the same in my presence on the dates above indicated and identified himself to be the individual who signed this sheet." Id. The law further provides that this statement "shall be accepted for all purposes as the equivalent of an affidavit, and if it contains a material false statement, shall subject the person signing it to the same penalties as if he had been duly sworn." Id.

- Lawanda Johnson Gainley, a subscribing witness who testified that when she registered people to vote, she left blank that statement of witness and the date the registration was signed; and

- Tracy Singh, a subscribing witness who testified that she could not explain why she was named as the subscribing witness for petitions apparently collected by other campaign employees.

Butler v. Duvalle, No. 15994/06, *slip op.* at 5-7 (N.Y. Sup. Ct. Aug. 10, 2006).

In addition to relying on this affirmative evidence, the State Supreme Court drew "an adverse inference from respondents' failure to produce any subscribing witnesses to attest to the validity of their challenged role in the signature collection process." Id. at 7. Based on its findings and this adverse inference, the Supreme Court concluded that "the undisputed evidence establishes as a matter of law that the questioned petitions were the product of the knowing, systematic acceptance of purported signatures of innumerable persons subscribed by others, thus constituting permeating fraudulent representation." Id. at 7-8 (citation and quotation marks omitted). The Supreme Court therefore declared Duvalle's and Totaram's designating petitions invalid. Id. at 8. The Appellate Division affirmed unanimously, concluding that "[t]he Supreme Court correctly determined that at the hearing the petitioners established, by clear and convincing evidence, that the method of obtaining signatures resulted in a designating petition that was permeated with fraud." 819 N.Y.S.2d at 670-71 (citations omitted).

I have also reviewed the precedents cited by the State Supreme Court and the Appellate Division in support of the proposition that designating petitions may be invalidated if they are "permeated with fraud." That proposition has been the law in New York State for at least fifty

years and has been applied as recently as last year. See, e.g., Ferraro v. McNab, 454 N.E.2d 533 (N.Y. 1983); Hennessey v. DiCarlo, 800 N.Y.S.2d 576, 577 (N.Y. App. Div. 2d Dept. 2005); Haas v. Costigan, 221 N.Y.S.2d 138, 140 (N.Y. App. Div. 2d Dept. 1961); Le Sawyer v. Board of Elections of Columbia County, 139 N.Y.S.2d 191, 196 (N.Y. Sup. Ct. 1954). The state court ruling was therefore based on an exhaustive factual record and longstanding, authoritative precedent.

Plaintiffs argue that "there was a violation of due process, in that the [Supreme Court, Queens County] was a prejudicial forum" in which to decide the validity of the designating petitions. (Tr. at 7.) Plaintiffs' reasoning is that judges in that forum are not elected properly: "They are appointed to be on the ballot. The appointment to the ballot is tantamount to the election. There is no primary allowed. . . . [Y]ou don't get a fair hearing in Queens Supreme Court because of the way [] the judges are selected[.]" (Id. at 8, 19.) I reject Plaintiffs' contention that the shortcomings in the election procedures of state court judges found in this district, Lopez Torres v. New York State Bd. of Elections, 411 F. Supp. 2d 212 (E.D.N.Y. 2006) (Gleeson, J.), and recently affirmed by the Second Circuit, Torres v. New York State Bd. of Elections, __ F.3d __, 2006 WL 2505627 (2d Cir. 2006), signals a departure from settled law that federal courts are bound by comity concerns to afford deference to state court rulings regarding state election law. Powell remains the law of this Circuit, Jacobowitz, 394 F.3d at 94-95, and this court will therefore defer to the State Supreme Court and Appellate Division decisions absent a showing that those courts intentionally acted to deprive Plaintiffs of their constitutional rights.

Plaintiffs have not made any allegations that would allow this court, under Powell, to grant Plaintiffs their proposed injunctive relief. Apart from conclusory suggestions of fraud by the State Supreme Court judge, the Plaintiffs have alleged no specific instance of willful misrepresentation of fact or law that might amount to a violation of Plaintiffs' due process rights. Furthermore, upon review of the evidentiary record and the decision of the State Supreme Court, I find that the proceedings were not infected by any apparent bias and that the authority cited by that court in support of its ruling accurately reflects state court precedent. In light of the great deference afforded to state court judges ruling on state election issues, and the lack of any basis to support Plaintiffs' allegation of bias by the state courts, I find that Plaintiffs have not sufficiently alleged any intentional action by Defendants or state court judges to deprive Plaintiffs of their constitutional rights.

2. **Equal Protection**

Plaintiffs also assert an equal protection argument. The Supreme Court of the United States has held that state courts have an "obligation to avoid arbitrary and disparate treatment of the members of its electorate." Bush v. Gore, 531 U.S. 98, 105 (2000). Plaintiffs cannot show that the New York State courts' decisions resulted in arbitrary and disparate treatment. As previously discussed, those decisions were based on lengthy, thorough fact-finding hearings, and so were not arbitrary. They were also based on the longstanding law of New York State, as applied to numerous parties for at least fifty years, and so their effect is not disparate.

The Second Circuit has held that "a § 1983 action to remedy errors in the election process allegedly violating the equal protection clause does not exist unless the state action constituted intentional or purposeful discrimination." Gold v. Feinberg, 101 F.3d 796, 800 (2d Cir. 1996)

(citations and quotation marks omitted). Other than suggesting that all decisions made by Queens County judges are tainted, plaintiffs do not allege that the New York State courts intentionally or purposefully discriminated against them or their favored candidates. Their equal protection argument therefore fails. See also Powell, 436 F.2d at 88.

Plaintiffs cite three equal protection cases as support for their argument that Duvalle must be placed on the ballot because, contrary to the findings of the State Supreme Court, Defendants cannot "convincingly prove" that Duvalle collected fewer than 500 valid signatures required to be placed on the ballot. (Grimaldi Affirmation ¶ 5.) Plaintiffs may be implying that the "permeation" rule, at least as applied to Duvalle and Totaram, violates voters' equal protection rights. The cases cited by Plaintiffs do not support this implication.

In Williams v. Rhodes, 393 U.S. 23 (1968), the Supreme Court considered whether Ohio's election law was applied to two nascent political parties in a manner that violated voters' equal protection rights. Id. at 26. The Supreme Court did not consider whether the two parties had collected sufficient petitions. In fact, state officials conceded that one party had enough petitions; they declined to place that party on the ballot because its petitions were not filed by the relevant deadline. Id. at 26-27. The other party conceded that it had not collected sufficient petitions. Id. at 27-28. This case did not address the constitutionality of the "permeation" rule or any similar or analogous rule.

The other two cases cited by Plaintiffs are also inapposite. In Reynolds v. Sims, 377 U.S. 533 (1964), the Supreme Court held that "an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State." Id. at 568. The case did not address the

constitutionality of a finding that a candidate's petition-gathering process was permeated with fraud. And in Smith v. Cherry, 489 F.2d 1098 (7th Cir.1973), the Seventh Circuit addressed an alleged conspiracy to nominate a "sham" candidate who withdrew after being elected, thereby permitting a party committee to designate his replacement. Id. at 1100.
The case, like Williams and Reynolds, did not consider whether some candidate had collected petitions using a process judicially determined to be "permeated" with fraud.

## III.   Conclusion

Plaintiffs have not shown that their claims of due process and equal protection violations are likely to succeed. For that reason, plaintiffs' motion for a preliminary injunction is denied.


SO ORDERED.

Dated: September 7, 2006                  /s/ Nicholas G. Garaufis
    Brooklyn, N.Y.                    NICHOLAS G. GARAUFIS
                                                       United States District Judge